BRUNSON et al. v. DAWSON STATE BANK. (No. 7210.)

(Court of Civil Appeals of Texas. Dallas. Jan. 16, 1915. On Motion for Rehearing, April 10, 1915.)

1. COURTS ☞122—JURISDICTION—AMOUNT IN CONTROVERSY—PLEADINGS.
As regards jurisdiction of the county court, defendants' plea that one of the notes sued on had been paid did not of itself lessen the amount put in controversy by plaintiff's petition.
[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413, 427; Dec. Dig. ☞122.]

2. COURTS ☞121—JURISDICTION—AMOUNT IN CONTROVERSY—RECONVENTION.
Defendant by reconvening and praying for damages of $274 conferred jurisdiction on the county court to determine all issues involved in the suit.
[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 410, 413–426, 428, 437, 450, 452, 453, 459, 466; Dec. Dig. ☞121.]

3. TRIAL ☞260—INSTRUCTIONS—REPETITION.
A requested charge, as far as correctly stating the law, being fully covered by the general charge, is properly refused.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

4. COURTS ☞121—JURISDICTION—AMOUNT IN CONTROVERSY.
Jurisdiction of the county court is not defeated merely because one of the notes sued on had been paid, and the other was for less than $200; it not appearing that it was fraudulently included to confer jurisdiction, but there being an honest difference of opinion as to its having been paid.
[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 410, 413–426, 428, 437, 450, 452, 458, 459, 466; Dec. Dig. ☞121.]

5. BILLS AND NOTES ☞499—PAYMENT—BURDEN OF PROOF.
The burden of proving payment, pleaded by defendant, of the note sued on, is on him, notwithstanding proof of its payment being secured by cotton placed with plaintiff, especially when the evidence shows, or raises the issue, that plaintiff was not authorized to sell except at defendant's request, and that he made none.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1682, 1695–1697; Dec. Dig. ☞499.]

6. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—GERMANE PROPOSITION.
The proposition that a contention of plaintiff was unduly emphasized in charges given at his request is not germane to defendant's assignment of error to the refusal of a charge.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

7. CHATTEL MORTGAGES ☞110 — SECURING FUTURE DEBTS.
A chattel mortgage, reciting, "being desirous of securing the * * * same, and all other liabilities, * * * now existing and which may hereafter arise," secures a note subsequently given by the mortgagor to the mortgagee, as well as one then given.
[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 192; Dec. Dig. ☞110.]

8. CHATTEL MORTGAGES ☞110 — SECURING FUTURE DEBT.
For a chattel mortgage to secure a future debt, it need not show the amount of such debt, or by its terms limit the time within which it shall be incurred.
[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 192; Dec. Dig. ☞110.]

9. SEQUESTRATION ☞12—AFFIDAVIT FOR ISSUANCE—STATEMENT OF INDEBTEDNESS.
The affidavit for issuance of writ of sequestration, stating the total amount sued for, need not state the different items of indebtedness claimed to be due, but it is enough that they are stated in the petition.
[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 11–16; Dec. Dig. ☞12.]

10. SEQUESTRATION ☞12—BOND—SURETIES.
One by making affidavit as agent for plaintiff for issuance of writ of sequestration did not make himself a party to the suit, so as to disqualify him to be a surety on the sequestration bond.
[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 11–16; Dec. Dig. ☞12.]

11. CHATTEL MORTGAGES ☞279—SEQUESTRATION—GROUNDS FOR QUASHING—VARIANCE IN PLEADINGS.
That plaintiffs' amended petition, in addition to the allegation in the petition and in the affidavit of sequestration, giving the date of execution of the chattel mortgage securing subsequent debts, as August 19th, makes the further allegation that when a note·sued on, subsequently given, was executed, it was orally agreed that the mortgage should secure it, does not constitute such variance in plaintiff's pleadings as to require quashing of the sequestration proceedings.
[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 529; Dec. Dig. ☞279.]

12. SEQUESTRATION ☞20 — REPLEVIN — LIABILITY ON BOND.
"The value of the property replevied" by defendant after sequestration, for which, under Rev. St. art. 7106, the sureties on the replevin bond are liable to plaintiff, is not limited to the amount stated in plaintiff's petition and affida-

vit for sequestration, but is its market value at the date of the trial, as shown by the evidence.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 42–49; Dec. Dig. ☞20.]

13. SEQUESTRATION ☞20—"STATUTORY BOND" OR "COMMON-LAW BOND."

A bond given on replevin of sequestered chattels is a "statutory bond," and not a "common-law bond," and so renders the sureties liable for the full value of the property, though, instead of being conditioned to pay "the" value of the property, as provided by the statute, it is conditioned to pay "said" value, theretofore recited at the amount stated in the affidavit for sequestration.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 42–49; Dec. Dig. ☞20.]

For other definitions, see Words and Phrases, Second Series, Common-Law Bond; also, First and Second Series, Statutory Bond.]

14. SEQUESTRATION ☞21 — WRONGFUL SEQUESTRATION—LIABILITY.

Exercise by sequestration of the right given one by his chattel mortgage to take possession of the property on default in payment of the secured debt cannot make him liable as for wrongful sequestration.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ☞21.]

On Motion for Rehearing.

15. BILLS AND NOTES ☞137—EXTENSION OF PAYMENT—EVIDENCE.

A finding of extension of time of payment of a note is not authorized by mere evidence that the maker requested the payee bank for an extension, and that it promised it would make one; no terms of extension being mentioned, and nothing further being done.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 334–337; Dec. Dig. ☞137.]

16. SEQUESTRATION ☞21—INJURY TO PROPERTY—LIABILITY.

The liability for injury of property sequestered while in the exclusive control and safekeeping of the officer levying the writ is his, and not that of the person obtaining the writ.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 50–54; Dec. Dig. ☞21.]

Error from Navarro County Court; R. R. Owen, Judge.

Action by the Dawson State Bank against G. W. Brunson. Judgment for plaintiff, and defendant and the sureties on his replevin bond bring error. Affirmed.

J. S. Callicutt and Hawkins Scarborough, both of Corsicana, for plaintiffs in error. Luther Johnson, of Corsicana, for defendant in error.

TALBOT, J. The defendant in error, hereinafter called plaintiff, brought this suit January 20, 1912, against G. W. Brunson, one of the plaintiffs in error, hereinafter referred to as defendant, to recover on two promissory notes, one for $152.50, dated August 19, 1911, payable October 1, 1911, with interest at the rate of 10 per cent. per annum after maturity and providing for 10 per cent. attorneys' fees, and the other for $202, dated September 30, 1911, payable November 1, 1911, and providing for the payment of a like interest and attorneys' fees. The suit was also to foreclose a chattel mortgage given by

the defendant August 19, 1911, on two mules, which recited, in effect, that it was executed by the defendant to secure the payment of the first above-mentioned note, and any other claim or demand that should thereafter arise and become due by the defendant to the plaintiff, and authorized the plaintiff or its officers upon default in the payment of defendant's indebtedness, or any part of the same at the maturity thereof, to sell or cause to be sold said mules either at public or private sale, with or without notice to defendant or the public. The plaintiff alleged and the evidence warrants the finding that, at the time of the execution and delivery of the said note of $202, it was stated and expressly understood and agreed between the defendant and the plaintiff's cashier that the mortgage theretofore executed by the defendant on the two mules did and should secure the payment of said $202 note. Plaintiff, at the institution of the suit, sued out a writ of sequestration, alleging in its affidavit therefor that the mules covered by its mortgage were of the value of $100 each, and of the total value of $200. This affidavit was made by E. W. Munsey as the agent of the plaintiff, and alleged that the two mules upon which its mortgage lien existed were in the possession of the defendant in Navarro county, Tex., and that the affiant feared the defendant would remove them out of said county during the pendency of the suit. The sequestration bond executed by the plaintiff was signed by the said E. W. Munsey and B. B. Munsey as sureties, and the writ of sequestration was issued and immediately levied on the two mules described in the mortgage. On January 26, 1912, the defendant replevied the mules by giving bond in the sum of $400, which recited that the mules had been valued by the officer levying the writ of sequestration, at $100 each, with plaintiffs in error J. S. Callicutt and E. O. Call as sureties on said bond. The condition of the replevin bond is that the defendant G. W. Brunson will not remove the two mules out of Navarro county, Tex., during the pendency of the suit, and that he will have them forthcoming to abide the decision of the court, "or that he will pay the said value thereof in case he shall be condemned so to do." The defendant moved to quash the sequestration proceedings, and this motion was by the court overruled. Defendant then pleaded to the jurisdiction of the court, alleging that the $202 sued on by plaintiff had been paid off and discharged before the filing of the suit, and that as the first note mentioned was less than $200, and the value of the two mules covered by the mortgage sought to be foreclosed was stated in the affidavit to be $200, the amount in controversy was below the jurisdiction of the county court. Defendant further pleaded a general demurrer, general denial, and specially under

oath that he never executed any lien upon the two mules seized under the writ of sequestration to secure the payment of the $202 note, and that it was never intended by plaintiff and defendant that said $202 note should be secured by any mortgage or lien whatever on said mules. He alleged that at the time of the execution of said $202 note it was secured by six bales of cotton, the receipts of which were turned over to the plaintiff at the time, and that that was the security on which he borrowed $202 from the plaintiff, evidenced by the second note sued on. He alleged and claimed that the real contract between plaintiff and defendant was that the mortgage on the mules was to secure no other indebtedness except the $152.50 note, and that the statement in the mortgage to the effect that said mortgage might secure indebtedness which might thereafter arise was not called to defendant's attention and was not agreed to by him, and that there was no contract or trade between plaintiff and defendant that the mortgage on the mules was to secure any indebtedness other than the $152.50 note. Defendant also pleaded that both notes were usurious, and that said $202 note was fully paid off and discharged by the deposit of six bales of cotton with the plaintiff for that purpose. Defendant also by plea in reconvention sought to recover of the plaintiff and E. W. Munsey actual and exemplary damages for the alleged wrongful and malicious suing out of the writ of sequestration, charging, in substance, among other things, that the officer making the levy of said writ at the instance of the plaintiff carried the mules levied on a distance of 22 miles, placed them in a wagon yard in Corsicana and kept them five or six days; that while said mules were in the possession of the officer they were damaged to the extent of $25 by improper care and want of feed; that one of said mules was further damaged $25 while in the possession of the officer who levied the writ of sequestration, by a piece of stick being stuck in his head. Defendant also asked for $1.50 per day for the loss of the use of his mules, $2.50 per day for lost time in replevying the mules, $5 for his trouble and time in taking the mules back to his home. Defendant also prayed for $50 attorneys' fees and the further sum of $150 as exemplary damages.

The court instructed the jury that the defendant was not entitled to recover anything on his plea in reconvention, and submitted the issues arising on the plaintiff's case in a general charge. The trial resulted in a verdict in favor of the plaintiff against the defendant for the sum of $412.62, and in favor of the plaintiff against J. S. Callicutt and E. O. Call, sureties on defendant's replevin bond, for the sum of $350, being the value of the two mules as found by the jury. Judgment in accordance with the verdict was rendered February 8, 1913, and the case is now before this court on writ of error.

[1, 2] The first, second, and third assignments of error relate to the question of jurisdiction raised by the defendant's pleadings. We do not think the case should be reversed for either of the reasons urged in these assignments. The two notes sued on aggregate more than $200 and less than $1,000, and hence it appears upon the face of the plaintiff's petition that the county court had jurisdiction of the amount in controversy. The plea of the defendant that the $202 note sued on had been paid did not of itself lessen the amount put in controversy by the plaintiff's petition. It simply raised the issue of the payment of said note as alleged by defendant and left in controversy the whole amount sued for by plaintiff. Besides, the defendant reconvened and prayed for damages against the plaintiff for the alleged wrongful and malicious suing out of the writ of sequestration in the sum of $272.50 and this of itself conferred jurisdiction upon the county court to hear and determine all issues involved in the suit. Phelps v. Parker, 30 S. W. 365; Hardeman v. Morgan, 48 Tex. 103; Joyce v. Hagelstein, 163 S. W. 356. If, therefore, because of the alleged value of the mules in plaintiff's pleadings, such charge was error, the error, for the reasons stated, was harmless. For the same reasons the error of the court, if error, in charging the jury that if they believed the value of the mules did not exceed $200, still if they believed plaintiff brought this suit in good faith, believing the defendant owed it more than $200, to find in favor of the jurisdiction of the court was not prejudicial to defendant. But it is held by our Supreme Court that in a recovery on a replevin bond the plaintiff is not limited to the value of the property replevied as alleged in the petition, and that the value of sequestered property is required to be stated in the affidavit for the writ as a predicate for the amount of the sequestration bond and not as the limit of recovery in case of replevy by the defendant. Therefore the plaintiff may recover the actual value of the property as fixed by the jury. Watts v. Overstreet, 78 Tex. 571, 14 S. W. 704. Neither was the statement of the value of the mules in the plaintiff's petition conclusive of their value. The evidence showed beyond controversy that the value of the two mules exceeded the sum of $200.

[3, 4] The court did not err in refusing to give the special charge requested by the defendant relating to the issue of the payment of the $202 note sued on and made the basis of the defendant's fourth assignment of error. This charge, in so far as it stated correctly the law applicable to the facts, was fully covered by the court's general charge, and for that reason, if no other, it was properly refused. The charge, however, should not have been given because it erroneously told the jury that, if they found that the $202 note had been paid in the manner referred to therein, then the county court had.

no jurisdiction to render a judgment against the defendant on the $152.50 note sued on, as the amount thereof was below the jurisdiction of that court, and in the event they found that said $202 note had been paid the form of their verdict should be: "We, the jury, find that the $202 note has been paid in the manner pleaded by the defendant, and that the defendant's plea to the jurisdiction of the court is sustained by the evidence." Whether the $202 note mentioned in the charge had been paid off and discharged was a sharply contested issue, and we have found no evidence in the record that would justify the conclusion that it was included in plaintiff's suit for the fraudulent purpose of conferring jurisdiction on the county court. On the contrary, it seems from the evidence that there was an honest difference of opinion between the plaintiff and defendant as to whether or not said note had been or should be considered as paid, and it would have been affirmative error against the plaintiff, under the circumstances, had the jury been instructed, as requested, that if they found that the $202 note had been paid the evidence sustained the defendant's plea to the jurisdiction of the court. In no event should such a charge, under the evidence, have been given.

[5] Nor did the court err in charging the jury that the burden of proof was upon the defendant to show payment of the $202 note. The defendant, in accordance with the provisions of the statute, pleaded payment of said note, and the burden of proof was upon him to show payment. Proof that the payment of the note was secured by certain cotton placed with the plaintiff would not change the rule with respect to the burden of proof, especially when the evidence further showed, or raised the issue as it did in this case, that plaintiff was not authorized to sell except at the instance and request of the defendant and that such request had not been made. The evidence seems amply sufficient to sustain the theory of the plaintiff that M. M. Swink, at the instance and request of the defendant, sold the cotton in question, and that the plaintiff did not have anything whatever to do with the sale and did not receive the proceeds arising from the sale of the same. The issue, therefore, which the defendant sought to have submitted by the special charge upon which his sixth assignment of error is predicated, was fully and fairly submitted by the court's main charge, and said assignment will be overruled.

[6] We are further of the opinion that the court did not err in refusing to give defendant's requested charge relating to the issue of usury. The special charge requested on this issue was sufficiently covered by the court's general charge to protect the rights of the defendant, and hence the giving of the special charge was not necessary for that purpose. The contention that the note for $152.50 provided for the payment of usurious interest is based upon the claim that 75 cents of the amount of said note was added as interest, and that said amount, together with the 10 per cent. stipulated in the note, was a greater rate of interest than allowed to be charged under our law. The plaintiff contends that the 75 cents included in the face of the note was agreed to be paid by the defendant for the preparation and recording of the mortgage given to secure its payment. This issue was fairly submitted in the court's general charge, and the special charge was, as stated, unnecessary. The proposition of the defendant under this assignment, to the effect that the trial court erred in refusing to charge the jury that the burden of proof as to this issue was upon the plaintiff, is not supported by the record. The record shows that the court charged the jury in relation thereto as follows:

"The burden of proof is upon the plaintiff to show that the 75 cents added in the note for $152.50 was included with the knowledge and consent of the defendant for the preparation and registration of the mortgage."

The proposition that the court erred in emphasizing the contention of the plaintiff as to this 75 cents being placed in the face of the $152.50 note for preparing and recording the mortgage by two special charges given at the request of the plaintiff is not germane to the assignment and not entitled to consideration.

[7, 8] The court's charge wherein the jury was told that the mortgage executed and delivered by the defendant to the plaintiff on August 19, 1911, operated as a security for the payment of the $202 note executed and dated September 30, 1911, was not error. The mortgage contains the following language:

"I, G. W. Brunson, having executed a promissory note, dated at Dawson, Texas, Aug. 19, 1911, payable to the order of the Dawson State Bank, etc. * * * and being desirous of securing the payment of the same, and all my other liabilities to said bank now existing and which may hereafter arise."

It is well settled that a mortgage can be made to cover future debts, especially as between the parties (Freiberg v. Magale, 70 Tex. 116, 7 S. W. 684), and the legal effect of the mortgage under consideration was to create a lien upon the mules described therein not only to secure the payment of the $152.50 note given by the defendant to plaintiff at the time of the execution of the mortgage, but to create a lien upon said mules for the payment of the $202 note subsequently executed. This being the legal effect of the mortgage, it was the duty of the court to so tell the jury, and this is what the court did in the charge attacked by the assignment we are here considering. We do not understand that it is essential to the creation of a lien for the payment of a future debt that the mortgage should show the amount of such debt, and by its terms limit the time within which the same should be incurred.

The defendant cites no case so holding and we are aware of none.

[9-11] There was no error in refusing to quash the sequestration proceedings, because the affidavit made for the issuance of the writ did not state the amounts of the different items of indebtedness claimed to be due, and because there was only one legal surety upon the sequestration bond, and because there was a variance between the affidavit for the sequestration and the amended petition filed by the plaintiff. The affidavit stated the total amount sued for, and the statute did not require the different items of indebtedness claimed to be due to be stated therein. These items were fully set out in the petition and that was sufficient. The contention that there is but one legal surety on the sequestration bond is not correct. There are two legal sureties on the bond. E. W. Munsey by making the affidavit for the issuance of the writ of sequestration as the agent of the plaintiff bank did not thereby make himself a party to the suit and disqualify himself from becoming a legal surety on the bond. It has been expressly held in this state that a stockholder in a corporation and who is also an officer and director therein is not disqualified from becoming a surety on a replevin bond, and we can see no material difference in such case and the case where such officer and director becomes a surety on a sequestration bond. There is certainly none in principle. The further contention that the sequestration proceedings should have been quashed and the sureties on the replevin bond released because plaintiff's original petition and the affidavit filed by it for the writ of sequestration varied from its amended and supplemental petitions, in that the original petition and affidavit alleged that the mortgage lien claimed to be of date August 19, 1911, whereas the amended and supplemental petitions charge that said lien was of date September 30, 1911, is not sustained by the record. The effect of the allegations in all these pleadings is that the mortgage lien was given August 19, 1911, and there is no such variance as claimed by the defendant. The date of the execution of the mortgage is not specifically averred in the supplemental petition, but in the original petition, the amended petition, and the affidavit for the writ of sequestration, it is alleged to be August 19, 1911, and in the amended petition the further allegation is made that there was a verbal agreement between the parties at the time the note for $202 was executed that the said mortgage should constitute a lien to secure the payment of that note. These additional allegations constituted no such variance in the respective pleadings of the plaintiff as authorized a quashal of the sequestration proceedings.

[12, 13] The next question is whether or not the court erred in allowing the plaintiff to prove that the value of the two mules de-scribed in its mortgage, and which had been sequestered and replevied, exceeded the sum of $100 each and the total value of $200, because there was no allegation in any of the plaintiff's pleadings of any value exceeding said sum, and because plaintiff's petition and the affidavit made for the issuance of the writ of sequestration placed the value of said mules at $100 each and at the total value of $200. We have practically decided this question against the defendant by what has been said in disposing of the first question discussed in this opinion. The value of the property mortgaged and replevied, for which the defendant and the sureties on the replevin bond are liable, is not the value alleged in the petition and affidavit for the sequestration. In other words, the value of the mules, as alleged in the plaintiff's petition and affidavit for the writ of sequestration, was not conclusive of their value on the trial of this case. Their real value was a proper subject of inquiry notwithstanding such allegations, and the liability of the sureties on the replevin bond was not limited to the sum of $200, but they were liable for the market value of said mules at the date of the trial, as shown by the evidence. Luedde v. Hooper, 95 Tex. 172, 66 S. W. 55; Rev. Stats. art. 7106; Watts v. Overstreet, supra. This value the jury said by their verdict was $350. The evidence warranted such finding, and judgment was properly entered against the sureties on the replevin bond for that amount. But the contention is made that the replevin bond was not a statutory bond, and that the extent of the liability of the sureties thereon, treating it as a common-law obligation, is $200. The replevin bond was in strict compliance with the statute, except in one particular. It recites that the value of the mules is $100 each and provides that the defendant "will have said property forthcoming to abide the decision of the said court, or that he will pay the said value thereof in case he shall be condemned so to do." The word "said" is not in the article of the statute prescribing the conditions of a replevin bond to be given when personal property has been sequestered, and it is claimed that because of its presence in the bond in question said bond is not a statutory one. In this view we do not concur. The evident purpose of the signers of the bond was to execute one in compliance with the statute, and to assume all the responsibility and burden of such a bond, and we think the fair and reasonable construction of the bond is that, in essential particulars, it is in compliance with our statute. We therefore hold that the word "said," as contained in the bond, did not limit the liability of the sureties to the sum of $200. It is well settled by the decisions of this state that, if the departure from the statutory conditions of such a bond make it less onerous, the bond may be enforced. Janes v. Reynolds, 2 Tex. 250; Walker v. Bennett, 1

White & W. Civ. Cas. Ct. App. § 649; Whitaker v. Sanders, 52 S. W. 638. And in the case of Commonwealth v. Laub, 3 Watts & Serg. (Pa.) 435, it was held that a variance in a statutory bond is fatal only when the conditions would impose a greater burden on the obligors than the law allows. The conditions of the bond involved in the present case is less onerous than those prescribed by our statute, for with the word "said" in the bond, and giving its language a literal construction, the liability of the obligors is limited to the value of the mules as stated in said bond, namely, $200, but with said word left out and the conditions of the bond confined to the language of the statute they would be liable for the value of the mules at the time of the trial of the case, which the jury found, from the evidence, to be $350. The bond being less onerous than the bond required by the statute, and being in substantial compliance therewith, it is a valid statutory bond and enforceable.

[14] Complaint is made of the following paragraph of the court's charge in respect to the defendant's plea in reconvention for damages:

"Plaintiff having been empowered and authorized under the terms of the mortgage given it by defendant upon the mules described and sequestered in this case to take possession thereof and sell same and apply the proceeds to the payment of its indebtedness, you are instructed that defendant cannot in any event recover damages by reason of suing out and levying of writ of sequestration, and, even though, you believe that said writ was wrongfully and illegally sued out by plaintiff, yet in no event is plaintiff liable to defendant for any damages resulting therefrom."

This charge states the law correctly as applicable to the facts of this case. It has been held more than once by courts of this state that a mortgagee who has the right under his contract to take possession of the mortgaged property on default in payment of the debt secured cannot be held liable for damages by taking such property by writ of sequestration, though it be alleged that the writ was wrongfully procured, on a false affidavit, and for the purpose of injuring the mortgagor, since he has done no more by the writ than his contract gave him the right to do with it. Wedig v. San Antonio Brewing Ass'n, 25 Tex. Civ. App. 158, 60 S. W. 567; Nichols v. Paine, 52 Tex. Civ. App. 87, 113 S. W. 972. In the first case cited the court said:

"It will be seen by the terms of the mortgages that the brewing company, defendant, had the right to take possession of the property, and sell it, to pay the debt secured thereby, or any part of the debt. The petition shows that the debt had not been paid in full, and the right to take the property into possession cannot be questioned. The exercise of that right and securing it by process of the court could not be ground for damages. Harling v. Creech, 88 Tex. 300, 31 S. W. 357."

This language is quoted with approval in Nichols v. Paine, supra, and writs of error were denied in both cases by the Supreme Court. The plaintiff under the terms of the mortgage given him had the right to take possession of the mules and sell them to pay the debt secured thereby, and as in Wedig v. San Antonio Brewing Ass'n, supra, he is only charged in the defendant's cross-action or plea in reconvention "with doing an act which the contract declared it could do, and it is difficult to see how it would render itself liable for doing it." The plea of the defendant that one of the notes sued on had been extended and was not due at the time of the filing of the suit was not sustained by the evidence, and becomes unimportant on this appeal.

We believe none of the assignments point out reversible error, and the judgment of the court below is therefore in all things affirmed.

### On Motion for Rehearing.

[15] In view of the earnest insistence of appellants that we erred, for several reasons, in affirming the judgment of the lower court in this case, we have again carefully examined and considered the several assignments of error relied on for a reversal. This action on our part but serves to confirm us in the opinion that every question raised and passed upon in the opinion was correctly decided. The statement in the opinion heretofore handed down to the effect that the plaintiff bank did not receive the proceeds arising from the sale of cotton by M. M. Swink has reference to and means that he did not receive such proceeds as a payment on the indebtedness due it by appellant Brunson, and the statement that the plea of the defendant Brunson to the effect that one of the notes sued on had been extended and was not due at the time of the filing of the suit was not sustained by the evidence is clearly correct. The full strength of the testimony of Brunson himself on this question, as quoted in the brief of appellants, is that "I talked to Mr. Dunn along in January about extending my note, and he agreed to do so." There is absolutely no testimony, either that a date to which the payment of the note should be extended, or that the terms and conditions of the extension, were agreed upon. The testimony of Brunson is insufficient to show an actual extension, and the testimony of Dunn, the officer of the bank to whom the application for an extension was made, testified positively that no extension was granted. The mere fact that appellant Brunson requested, and the bank may have promised to some time in the future, extend the payment of the note without evidence that such extension was actually made, would not authorize a finding that an extension had been made. However, there is no proof of any consideration for the extension claimed.

In holding that the trial court was authorized by the terms of the mortgage to instruct the jury that appellee had a mortgage lien upon defendant's mules to secure the pay-

ment of the $202 note sued on, we were not unmindful of the decision of the Supreme Court of this state in McDavid v. Phillips, 100 Tex. 73, 94 S. W. 1131. The case at bar is distinguishable from that case in the facts and not ruled thereby.

[16] Appellees having the right under the terms of the mortgage to take possession of the mules upon default in the payment of its debt, it cannot be held that the writ of sequestration was wrongfully sued out, and, there being no evidence that appellee participated in the alleged negligent acts of the officer levying said sequestration which is claimed to have resulted in injury to the mules while in his possession, appellee was not responsible therefor. McFaddin v. Sims, 43 Tex. Civ. App. 598, 97 S. W. 335; Kanaman v. Hubbard, 160 S. W. 304. Before the mules were replevied by defendant, they were in the exclusive control and safe-keeping of the officer who levied the writ of sequestration, and if, on account of his acts or want of proper care, they were injured, as alleged, he was liable therefor. Kanaman v. Hubbard, supra.

We deem it of no use to add anything to what has been said in our original opinion on other matters discussed in the motion for a rehearing. The position of appellants on all the questions discussed and passed on in that opinion were fully understood and the conclusions reached the result of a careful consideration of them.

The motion for a rehearing is overruled.

---

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

