## MURPHY v. INDIA TIRE & RUBBER CO.*

Circuit Court of Appeals, Fifth Circuit.
November 24, 1928.

Rehearing Denied December 21, 1928.

No. 5272.

*Certiorari denied 49 S. Ct. 252, 73 L. Ed. —.

W. C. Douglas, of San Antonio, Tex. (Douglas, Carter & Black, of San Antonio, Tex., on the brief), for plaintiff in error.

John Davis, of Dallas, Tex. (Davis & Hatchell, of Dallas, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This action was brought by the appellee on April 1, 1927, to recover possession of described tires and tubes alleged to be in possession of the appellant, and the tires and tubes sued for were seized under a writ of sequestration issued at the instance of appellee. A pleading filed by the appellant made exhibits thereto two written contracts between appellant and appellee, both dated March 4, 1926; one of those contracts being with reference to appellant selling products of the appellee, and the other, herein referred to as the warehouse agreement, being with reference to the warehousing and distribution by appellant of products of the appellee. The first-mentioned agreement contained the following:

"The contract between the parties is fully set forth herein; and has been entered into under the inducements herein expressed and no others; and shall become effective when signed by its duly authorized officer and shall expire March 15, 1927, noon, unless otherwise previously terminated as provided hereafter.

"This agreement supersedes and voids any and all previous agreements between the parties, and it may be canceled by either party upon thirty (30) days' notice in writing, delivered by registered mail or in person."

The warehouse agreement contained the following:

"The contract between the parties is fully set forth herein, is not subject to modification by oral agreement and has been entered into under the inducements herein expressed and no others. It shall become effective only when executed by the proper officers of the contracting parties and shall expire by limitation March 15, 1927, unless otherwise previously terminated as provided hereafter. * * *

"Upon termination of this agreement, warehouseman agrees to deliver immediate-

ly to freight depot or other location in San Antonio, Texas, designated by company, all the property of company then in his possession, without commission or expense to company."

The pleading mentioned as it was amended contained the following:

"Defendant represents that under date of March 4, 1926, he qualifiedly accepted a certain contract in writing with plaintiff (as is hereinafter set out), known as a 'warehouse agreement,' which obligates plaintiff to store a stock of its products in defendant's warehouse, and obliges defendant to accept and store same until March 15, 1927. Defendant's compensation is fixed at a commission of 5% on the amount of plaintiff's goods sold from said warehouse. It provides that it may be canceled forthwith for breach or by either party on 30 days' notice. A copy of said contract is hereto attached, marked Exhibit 'A.'

"Said contract correctly states the agreement in part, but incorrectly states the agreement in part by reason of certain false and fraudulent promises and representations made by plaintiff's duly authorized representatives, to wit, S. C. Searles as Secretary-Treasurer, Harry L. Corbett as Divisional Sales Manager, R. C. Scott as Dallas Branch Manager, one Fishburn, a special representative, and J. M. Alderfer as president, acting jointly and severally. Said promises and representations were made with no good faith purpose of complying therewith, that is to say said promises and representations were made in connection with said written contract with a view to inducing defendant to accept said written contract, embodying terms at material variance with a verbal understanding theretofore arrived at and then orally reaffirmed and with the idea thereby to enable plaintiff, on the technical grounds of holding defendant to the writing, to repudiate said verbal understanding at will. Said verbal agreement and the promises and representations made in connection therewith are as follows:

"Plaintiff, acting through its duly authorized representatives, to wit: S. C. Searles as Secretary-Treasurer, R. C. Scott as Dallas Branch Manager, one Fishburn, a special representative, and J. M. Alderfer as president, acting jointly and severally, prior to December 4, 1925, had reached an agreement that plaintiff would establish a distributing warehouse in San Antonio with defendant in charge, all as set out in said contract of March 4, 1926, except that it was to run for a period of five years, defendant to have a guaranteed minimum compensation of $3,600.00 per annum, and plaintiff represented that it would handle at least $200,000.00 in merchandise through said warehouse per annum, upon which defendant was to receive a commission of 5% of the sales price as fixed by the contract.

"A written contract was prepared about December 1, 1925, along the lines of said verbal agreement and forwarded to plaintiff's home office for execution, covering a period of one year. Defendant informed plaintiff's representatives that he could not afford to incur the expense of making a long time rental contract upon a large building such as was necessary (being a building inspected and approved by plaintiff's representatives) and other considerable outlays, without a five year contract containing the protection afforded by the terms outlined in said verbal contract (referring to the five year term) and which were carried into the written contract so prepared. Plaintiff's representatives assured defendant that the contract as prepared would be carried out for the full term of five years, but represented that it was necessary to make it read for only one year to conform to the period covering other agency contracts. Relying on said statements defendant executed the contract in question and same was forwarded to plaintiff's home office at Akron, Ohio, for completion. After much delay, to wit, about the first part of April, 1926, plaintiff presented the warehouse contract of March 4, 1926, aforesaid, and defendant refused to accept same as the embodiment of the actual agreement binding upon the parties, whereupon plaintiff's representatives stated to defendant that said contract was the standard form of plaintiff's contracts and was so prepared to conform to the contracts of other agents, and thereby prevent any claim of discrimination and any dissatisfaction with other agents because of the special contract conceded to defendant, but that the contract as theretofore outlined with defendant would be carried out for the full term of five years, and embracing said guaranteed minimum compensation.

"Defendant represents that each and all of said promises were made to induce defendant to accept said contract of March 4, 1927, and with no intention of complying therewith and constituted a fraudulent scheme to lull defendant into a feeling of security and at the same time reserve to plaintiff an avenue of escape from said contract as made should it desire to avoid its obligation thereunder and therefore with no good faith

intention of complying therewith, and defendant did rely thereon and by reason thereof did thereafter, at the insistence of plaintiff's representatives, make a five year lease of a building (approved of by plaintiff's representatives), entailing a rental liability to defendant of $19,650.00, and did incur expenses aggregating $2,700.00 in equipping said building for the proposed warehouse business.

"On or about March 15, 1927, plaintiff repudiated said warehouse contract so made with defendant for a period of five years, under which defendant was guaranteed a minimum compensation of $3,600.00 per annum and assured a profit of 5% on $200,000.00 or $10,000.00, per annum. And since said date plaintiff has wholly failed and refused to comply with its obligations under said contract, by reason of which defendant has been damaged as follows."

The succeeding allegations specified items of damage sustained by appellant as results of appellee's failure to comply with the oral agreements alleged, and the pleading contained a prayer that appellant recover the items of damages referred to. That pleading also contained allegations to the effect that the writ of sequestration was wrongfully sued out, and a claim of damages alleged to have been sustained by appellant in consequence of the alleged wrongful sequestration. The court sustained demurrers or exceptions to that pleading.

In effect a principal contention in behalf of the appellant is that his right to recover damages for violations of alleged oral promises of appellee's representatives is the same as it would have been if all that was orally agreed to prior to the execution of the written contracts had been embodied therein. By the execution of a written contract all prior or contemporaneous oral negotiations or agreements as to its terms are merged or superseded, and the writing is the sole evidence of the contract so long as it remains unreformed by a subsequent agreement of the parties or by the decree of a court of equity. A party to a written contract which does not correctly represent prior or contemporaneous oral agreements as to its terms cannot abandon it and sue on the contract as orally assented to prior to the reduction of it to writing. DeWitt v. Berry, 134 U. S. 306, 315, 10 S. Ct. 536, 33 L. Ed. 896; Ryan v. Ohmer (C. C. A.) 244 F. 31; Kleis v. Niagara Fire Ins. Co., 117 Mich. 469, 76 N. W. 155; 13 C. J. 597.

The basis of the claim asserted by appellant's pleading is oral promises or statements relating to the agreement embodied in the written contract and which are inconsistent with or contradictory of provisions contained in the written instrument. Though, because of fraud, accident, or mistake, the appellant may have been entitled to have the written contract reformed or canceled, he was not entitled to have the warehouse agreement, so long as it was unreformed, treated as consisting of the written agreement evidencing it and oral promises or representations which were not embodied in the writing and were inconsistent with the provisions thereof, or to recover for breaches of oral promises relating to the agreement evidenced in writing which were not embodied in the writing and were inconsistent with the provisions thereof.

As under the terms of the warehouse agreement upon the expiration of it by limitation appellee was entitled to the possession of the property seized under the writ of sequestration that seizure did not prejudicially affect any substantial right of the appellant. The judgment is not subject to be reversed because of a ruling which did not affect the substantial rights of the appellant. U. S. C. title 28 (28 USCA) § 391; Brunson v. Dawson State Bank (Tex. Civ. App.) 175 S. W. 438.

The judgment is affirmed.