No. 20,231.

THE NORTHRUP NATIONAL BANK, *Appellee*, v. THE YATES CENTER NATIONAL BANK and A. H. GILLIS, as Receiver, etc., *Appellants*.

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR — *Judgment — Ambiguous Oral Contract — Evidence.* A judgment rendered on an oral contract between banks concerning the transfer of notes and credit given will not be reversed when based on a general finding, where the evidence is not clear as to what the oral contract was, but shows that the contract was afterward confirmed by letters which referred to the oral contract but did not state the complete terms thereof, and the contract is partly explained by the subsequent conduct of the parties.

2. EVIDENCE—*Competency—Notes—Endorsement—Purpose.* Where notes are transferred from one bank to another by endorsement, evidence to show the contract betwen the banks as to the purpose for which the notes were transferred is competent.

3. PLEDGES—*Notes as Collateral Security—Delay in Returning—Laches.* Where notes are endorsed by one bank to another as collateral security for a credit obtained under an agreement that any of the notes may be returned if found unsatisfactory, a delay of two months and twenty days in returning notes found unsatisfactory can not be said to be unreasonable as a matter of law, although the bank transferring the notes and obtaining the credit has in the meantime been placed in the hands of a receiver.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed July 8, 1916. Affirmed.

*Altes H. Campbell,* and *S. A. Gard,* both of Iola, for the appellants.

*Baxter D. McClain,* of Iola, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff recovered judgment against the defendants for money loaned. The defendants appeal.

On October 3, 1913, C. G. Ricker, president of the Yates Center National Bank, the defendant bank, went to the Northrup National Bank of Iola, the plaintiff bank, for the purpose of obtaining money or credit. This resulted in an agreement by which the Yates Center National Bank was to furnish to the Northrup National Bank notes held by the Yates Center

National Bank. The Northrup National Bank was to give credit to the Yates Center National Bank for the face amount of the notes. The credit given was to be subject to check, except that at least twenty-five per cent of the credit was to remain on deposit with the Northrup National Bank. A credit of $12,000 was thus obtained.

We are met at the outset with a dispute as to the effect of this transaction. The plaintiff contends that the notes involved in the credit were deposited as collateral security for the loan, and belonged to the Yates Center National Bank, subject to its direction and control; and were not the property of the Northrup National Bank except as security for the amount loaned. The defendant contends that to obtain this credit the Yates Center National Bank endorsed without recourse a number of promissory notes to the Northrup National Bank; that the notes, having been endorsed and having been delivered with the endorsements on them, showed a complete and fully executed contract of sale. The case was tried without a jury. No special findings were made.

Pursuant to the agreement, several notes—the face value of which formed the basis of the credit account—were delivered to the Northrup National Bank by the Yates Center National Bank, and endorsed in blank by C. G. Ricker personally and by the Yates Center National Bank without recourse. That bank was given credit on the books of the Northrup National Bank for $12,000. The agreement provided that any of the notes delivered to the Northrup National Bank and not found satisfactory as a basis for the credit given could be charged back against the account at the option of the Northrup National Bank. No time was fixed nor limitation made as to when or for what reason this option should be exercised. The agreement further provided that the Northrup National Bank was to receive six per cent per annum on the total of the credit account as evidenced by the aggregate face value of the notes held by it, and was to pay to the Yates Center National Bank two per cent per annum on the daily balance of the account. The agreement was carried out by both banks until about December 20, 1913, although the twenty-five per cent reserve was not always maintained. The reserve was restored when the attention of the Yates Center National Bank was directed thereto.

December 2, 1913, the national bank examiner for that district closed the doors of the Yates Center National Bank and a receiver therefor was appointed three days later.

Between the time the agreement was entered into and the appointment of the receiver, some of the notes were paid and were replaced by others; and some were returned by the Northrup National Bank to the Yates Center National Bank, either upon the former's initiative or the latter's request. A note of W. G. Toedman *et al.* for $848, due December 10, 1913, not being taken up or paid when due, was charged to the credit account and forwarded to the Yates Center National Bank on December 20, 1913. The receiver refused to accept such return on the ground that he was not bound by the agreement. February 25, 1914, the Northrup National Bank returned a note signed by Frank Harder for $500, and one signed by Emile Fugier *et al.* for $1500, charging these amounts to the credit account. These notes the receiver refused to accept.

The Northrup National Bank thereupon presented to and filed with the receiver its verified claim, and demanded payment, for the sum of $1083.76, being the balance due it after applying funds on deposit with it. A statement of the account was made a part of the demand. The receiver refused to list the claim as presented, and demanded that the Northrup National Bank pay over to him in cash the balance that would have been in the credit account if the Toedman, Harder and Fugier notes had not been charged off. This was refused and this action was commenced.

1. Who owned these notes? The defendants contend that the Northrup National Bank did. The trial court, by its judgment, found that the Yates Center National Bank owned them, and that the Northrup National Bank held them as collateral security for the credit that had been given to the Yates Center National Bank. Ordinarily, the construction of a contract is a question of law for the court, and a reviewing court can construe a contract as well as the trial court. In the present case, however, it is not clear what the oral contract was. The correspondence introduced in evidence to show the contract referred to the conversation by which the contract was made between the officers of the banks, recited a part of the understanding of the parties, but did not specify the terms of the

contract. This contract was explained somewhat by the subsequent conduct of the parties. The situation is such that the general finding of the trial court as to what the contract was, and the construction placed thereon by that court, are binding on this court. If the trial court was in error in its construction of the contract, that error does not appear in either the transcript or the abstract.

2. The defendants contend that as the notes were endorsed in writing, evidence of the terms of the contract by which they were placed in the plaintiff bank could not be introduced. This is based on the ground that oral evidence can not be introduced to add to, contradict, vary, or alter the terms of a written contract. The evidence to show the contract by which the notes were placed in the plaintiff bank was not subject to this objection. It is true that the endorsement of the notes was a contract by itself, but it was a part of the larger, or whole, contract between the banks. Under the terms of that contract, the notes were to be endorsed by the Yates Center National Bank and C. G. Ricker, its president, to the Northrup National Bank. Evidence to show the whole contract did not in any way contradict, add to, vary, or alter the terms of the written contract contained in the endorsement. Negotiable promissory notes are endorsed for various purposes; sometimes for the purpose of transferring all title, sometimes as collateral security for other obligations, and sometimes for collection, or other purposes. The purpose for which the notes are endorsed rarely, if ever, appears in the endorsement. It is not necessary that the purpose shall so appear. The evidence objected to was competent.

3. The defendants contend that the plaintiff's delay in returning the notes was unreasonable, and argues that in the present case this has become a question of law. It was two months and twenty days from the time of the appointment of the receiver until the plaintiff returned the last of the three notes in controversy. That was not a long time. It was short. That delay can not be said, as a matter of law, to be unreasonable. Whether or not that delay was unreasonable was a question of fact to be determined by the trial court. It was determined in favor of the plaintiff so far as it was necessary to determine the question.

The judgment is affirmed.