## FIRST STATE BANK OF HARTSHORNE v. SOUTHWEST NAT. BANK OF OKLAHOMA CITY et al.

No. 15089. Opinion Filed April 19, 1927.

Rehearing Denied June 28, 1927.

**1. Evidence — Contracts — Parol Evidence Varying Writing—Contract not Modified by Oral Agreement.**

A part of an oral agreement which is reduced to writing, but which has the appearance of an entire and complete contract within itself, is not subject to variation or modification by parol testimony, or subject to modification by an executory oral agreement, unless the substance of the oral agreement is in writing and acquiesced in by the party sought to be charged in the performance of the conditions involved in the contract.

**2. Same—Effect of Reducing Oral Agreement to Writing.**

But if the oral agreement is reduced to writing in the manner aforesaid, it will be deemed to relate back to the date of the written contract and will be treated as a contemporaneous written agreement.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by the First State Bank of Hartshorne against the Southwest National Bank of Oklahoma City and the First National Bank of Oklahoma City for debt. From a judgment sustaining demurrer by the defendants to plaintiff's evidence, the latter brings error. Affirmed.

Counts & Counts and R. A. Billups, for plaintiff in error.

Wilson, Tomerlin & Threlkeld and Abernathy & Howell, for defendants in error.

RILEY, J. Plaintiff in error. First State Bank of Hartshorne, brought this action for debt against the Southwest National Bank of Oklahoma City and the First National Bank of Oklahoma City, and from a judgment of the court below wherein defendants' demurrer to plaintiff's evidence was sustained, the plaintiff appealed to this court.

The plaintiff below alleged, in substance, that it opened a checking account with the Southwest National Bank in September, 1920; that the First National Bank acquired the assets of the Southwest National Bank and agreed in writing with the latter bank to assume the obligations of the Southwest

National Bank owed by the selling bank to its depositors; that at the time of the transfer of the assets the plaintiff had an account of several thousand dollars subject to its check with the said Southwest National Bank; that the First National Bank had wrongfully refused to answer to plaintiff for the obligation of its deposit.

The Southwest National Bank answered, setting up an oral agreement entered into between the plaintiff bank and itself, wherein it was alleged that the defendant bank agreed to discount bank notes of the plaintiff bank on the condition that the plaintiff bank should carry an open account with it, and that such notes as were purchased from the plaintiff and not paid by the maker thereof when due should be charged to the account so carried by the plaintiff bank. That, pursuant to the agreement, the defendant accepted from plaintiff and discounted a note executed and delivered to plaintiff bank by one McKeever, and said note was indorsed "without recourse" and transferred to defendant bank, and said note was renewed from time to time, and that finally McKeever refused payment thereon; that the sum of said note was $9,600, and that said sum was charged to plaintiff's account in the defendant bank; that this item accounts for the difference in the settlement between, the banks on the account so carried.

The plaintiff bank contends that the indorsement by plaintiff to defendant "without recourse" on the McKeever note constituted a contract in writing, and that the Negotiable Instrument Law relating to such an indorsement becomes a part of that contract, and that evidence of the terms of the agreement (oral) by which the note was placed in the defendant bank could not be introduced, this on the grounds that oral evidence cannot be introduced to add to, contradict, vary, or alter the terms of a written contract. Daniel on Negotiable Instruments (6th Ed.) p. 670; 3 R. C. L. 1159; Cressler v. Brown, 79 Okla. 170, 192 Pac. 417; Copeland v. Burk, 59 Okla. 219, 158 Pac. 1162. L. R. A. 1917A, p. 1165; 2 A. L. R. (note) 212; 4 A. L. R. 794; 11 A. L. R. 638.

The authorities cited state the general rule; however, there is a well-established exception to this rule.

In the case at bar, as in the case of Northrup Nat. Bank v. Yates Center Nat. Bank (Kan.) 159 Pac. 403, the oral agreement is not clear, but there it is stated that ordinarily the construction of a contract is a question of law for the court. The correspond-ence in evidence throws light upon the oral contract, and the oral contract is explained somewhat by the subsequent acts of the parties.

It is true that the indorsement of the note constituted a contract within itself, but there is some evidence establishing that it was a part of the larger or whole contract between the banks, and this evidence is not parol, but in writing.

There is a letter in the record, dated January 5, 1923, introduced by plaintiff, which was received by the plaintiff bank. It is:

"Oklahoma City, Oklahoma.
"First State Bank,
  "Hartshorne, Okla.

"Gentlemen:

"We enclose you herewith for collection when due note of F. J. & Welma L. McKeever in the amount of $9600.00, maturing January 10th, 1923.

"Unless otherwise advised by you we will charge this item to your account on the date of maturity.

"We beg to remain,
    "Very truly yours.
        "Beulah Moore,
"January 5 1923.          Discount Dept."

In regard to this letter the following testimony occurred in the cross-examination of Mr. Simms, vice president of the plaintiff bank:

"Q. After you got the letter of January 5th, telling they were going to charge it to your account on approaching maturity, you knew they meant to do it unless you told them not to—unless you made different arrangements? A. I didn't know. We didn't have any advice they had done it. Q. You had the advice they were going to? A. We had the advice they were going to, yes. Q. You had the advice they were going to. You didn't instruct them otherwise? A. We didn't instruct them. Q. The time elapsed from the date you received that letter on January 5th. until the consolidation or until the sale by the Southwest National Bank of its assets— A. Until we knew it had been charged to our account? Q. I say that time elapsed without you taking any action at all? A. That is right. Q. Charging this note to your account on January 12th, by the Southwest National Bank pursuant to the letter they wrote you they would charge it. which letter is dated January 5th. was no different situation than the other items—other items.—this note or its predecessors received when they were charged to your account and you would credit them with the amount charged to your account as you have read off in evidence awhile ago on your books. I say it was all treated in the same way. wasn't

it—the bank handled it in the same manner? A. Yes, whenever they would send us one of the old notes we would send them a new note and charge them with the proceeds of the new note and credit them with the old note."

Defendant's Exhibit "D", introduced in evidence, was a letter dated December 6, 1922 written by B. C. Simms, as vice-president of the plaintiff bank, as follows:

"Hartshorne, Oklahoma.
"December 6th. 1922.

"Mr. L. T. Sammons. President,
"The Southwest National Bank,
"Oklahoma City, Oklahoma.

"Dear Sir Sammons:

"If satisfactory, please charge our account with interest on the F. J. McKeever note to January 10th, 1923. Think the major portion of it will be liquidated by that time.
"Yours very truly,
"B. C. Simms, Vice-President."

Defendants introduced a letter written by the Southwest National Bank to the plaintiff bank on September 26, 1922, as follows:

"First State Bank,
"Hartshorne, Okla.

"Gentlemen:

"We enclose you herewith for collection when due note of F. J. & Velma L. McKeever, in the amount of $9600.00, maturing October 6th, 1922.

"Unless otherwise advised by you we will charge this item to your account on the date of maturity.

"We beg to remain,
"Very truly yours,

"Discount Dept. Southwest Natl. Bk."
"Sept. 26, 1922.

In regard to this letter Vice-President Simms of the plaintiff bank testified as follows:

"Q. You made no objection to that arrangement but received the note in the manner as stated there and later got a new note and sent it to them? A. We did."

Defendants introduced a letter dated December 7, 1922, as follows:

"December 7. 1922.
"Mr. B. C. Simms.
"Hartshorne, Oklahoma.

"Dear Mr. Simms:

"We have charged your bank and have extended the McKeever note until January 10th and at that time this note will have to be paid or reduced considerably, as we cannot carry it as it is.

"This note has already been extended a

couple of times and it does not look very good in our note case with all of these extensions.
"Yours truly,
"President."

Now it must be borne in mind that the Negotiable Instrument Law applicable to the restricted indorsement "without recourse" relieved the plaintiff bank of any responsibility whatever in the event the maker of the note failed to pay at maturity either interest or principal, but here we have a different set of facts. Here the vice-president of the plaintiff in writing subsequently directed the defendant bank to charge its account with interest on the note in question. There was no indication in the letter that the plaintiff bank was acting as agent for McKeever. There is evidence by the letter December 7, 1922, of two prior extensions of the note. There is the statement contained in the letter that the interest has been charged to the plaintiff bank as directed. and that the note must be paid or reduced materially. These letters constituted substantial written evidence of an oral agreement modifying the contract established by the indorsement "without recourse," and tending to establish that the account carried by the plaintiff bank with the defendant bank was subject to being charged with the principal and interest of the McKeever note.

The situation is such that the general finding of the trial court as to the larger contract embracing the lesser contract and the construction placed thereon by that court are binding on this court.

As stated in the Northrup National Bank Case, supra:

"Negotiable promissory notes are indorsed for various purposes—sometimes for the purpose of transferring all title, sometimes as collateral security for * * * other purposes. The purpose for which the notes are indorsed rarely, if ever, appear in the indorsement. It is not necessary that the purpose shall so appear."

The purposes to be effected by the statutes sought to be applied. sections 5035 and 5080, Compiled Oklahoma Statutes. 1921. are: (1) To merge all contemporaneous oral negotiations into a written contract (2) To eliminate the privilege, of such a party to such a contract, of modification of such a contract by an executory oral agreement with the attendant uncertainties. But in the case at bar we are confronted with written evidence of a contemporaneous oral agreement tending to establish the larger contract. and as such the same being written evidence, it

is not within the purposes of the statutes, supra, i. e., to prevent the modification of a written contract by oral agreements resting upon parol testimony. Moreover, not only was the substance of the oral agreement reduced to writing, but there was acquiescence in its terms by the plaintiff bank in the course of its acts construing the same. The rule applicable may be stated as follows: A part of an oral agreement which is reduced to writing, but which has the appearance of an entire and complete contract within itself, is not subject to variation or modification by parol testimony, or subject to modification by an executory oral agreement, unless the substance of the oral agreement is in writing and acquiesced in by the parties sought to be charged in the performance of the conditions involved in the contract.

But if the oral agreement is reduced to writing in the manner aforesaid, it will be deemed to relate back to the date of the written contract and will be treated as a contemporaneous written agreement.

The oral contract apparently was one of the moving considerations inducing the Southwest National Bank to enter into the written contract concerning the McKeever note. The defendant in error comes within the exception to the rule above stated and the attending evils guarded against by the sections of the statutes above set out, i. e., the uncertainties of agreements resting in parol testimony, are not here present.

The judgment of the trial court is affirmed.

MASON, V. C. J., and PHELPS, HUNT, and HEFNER, JJ., concur.

BRANSON, C. J., and LESTER and CLARK, JJ., dissent.

HARRISON, J., absent, not participating.

Note.—See under (1) 13 C. J. p. 590, §610; 22 C. J. p. 1098, §1443: 10 R. C. L. p. 1030; 1 R. C. L. Supp. p. 1142; 4 R. C. L. Supp. p. 687; 5 R. C. L. Supp. p. 583. (2) 13 C. J. p. 594, §610.