No. 28,623.

THE FIRST NATIONAL BANK IN CARMEN, *Appellant,*
v. H. CLAY WILLIS, *Appellee.*

(280 Pac. 782.)

Opinion filed October 5, 1929.

R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston and Mark H. Adams, all of Wichita, for the appellant.

Benjamin F. Hegler and A. V. Roberts, both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is a suit by the First National Bank in Carmen, Okla., against the defendant, an individual, upon his guarantee of a certain note for $2,500 and interest, designated as the Arkansas note.

The defendant in his answer alleged a reciprocal relationship between the old bank at Carmen, called the Carmen National Bank, assignor of the plaintiff at and prior to the time of giving the note and guarantee, and the Fairview State Bank, another Oklahoma bank twenty miles distant therefrom, by which each of said banks borrowed from the other when in need of currency or having excess loans by giving and assigning notes as collateral security for such loans. Defendant also by way of set-off and counterclaim set up two notes assigned to him by the Fairview State Bank on which it had loaned to the bank that was assignor of plaintiff the face value thereof many years before and for which the present notes were renewals as collateral for such loans. These notes were known as the Winslow note and the Allen note, which were for $1,500 each. The trial court made findings of fact and conclusions of law and rendered judgment for the defendant for $98, allowing the plaintiff's claim and the set-off thereto, the $98 being the amount in excess of the claim of the plaintiff. From this judgment the plaintiff appeals.

The appellant treats its several assignments of error under four headings as follows:

1. That plaintiff as a purchaser of the assets of the Carmen National Bank was not liable for these two notes held by the defendant.

2. That the Carmen National Bank was not liable on these two notes or the ones for which they were substituted.

3. That there was no liability on the Winslow note, because if it was given for collateral the account was barred by the statute of limitations and there was no assignment of the account to the defendant, and because all the benefits from the two notes went to Winslow and not to the Carmen National Bank.

4. That plaintiff is not liable for more than sufficient to offset plaintiff's claim.

The findings of fact and the evidence show that the Carmen Na-

tional Bank went into the hands of a receiver in January, 1924. All three of these notes were past due at that time. One C. W. Watson, acting for the purchasers, investigated the condition of the bank, its assets and liabilities, and was informed of the disputed claims upon these three notes. The new bank, plaintiff herein, was organized and purchased the assets about one month after the failure of the old bank. Watson became president of the new bank and the cashier of the old bank became the cashier of the new. The evidence also shows the old bank entirely discontinued business, the new one taking all of its assets and assuming liability for its deposits and certain other obligations enumerated and listed in the contract of purchase, the Winslow and Allen notes not being in the list. The only additional assets of the new bank were the $40,000 new capital.

Appellant urges the well-recognized doctrine that:

"Where one bank purchases the business and takes over the deposits of another bank, in the absence of an express contract to that effect, it cannot be held for the liabilities of the bank purchased, other than its deposit liabilities." (*Farris v. Hodges,* 59 Okla. 87, syl. ¶ 3.)

And the further rule that even where the officers of the old and new bank are the same, unless there is fraud, the purchaser at a receiver's sale may limit its liability to that assumed in the contract. But these cases do not approach the question of merger or consolidation as is claimed to be in this case. The case of *First State Bank of Mangum v. Lock,* 113 Okla. 30, cited and relied upon by appellant, had in it none of the elements of merger or consolidation. The old bank continued to exist and liquidate and was even joined with the purchaser as a defendant in the litigation. In the case of *Farris v. Hodges,* 59 Okla. 87, cited, there was no evidence tending to show that the purchasing bank assumed any of the liabilities of the selling bank and none to show it was a mere continuation of the former. Neither was there any evidence as in this case to show that the officers of the new bank were fully informed and acquainted with all the disputed claims of the litigating parties. The distinction is clearly pointed out in *Riegel v. Planters State Bank,* 100 Okla. 42, as follows:

"If the Planters State Bank acquired the assets of the Mountain Park State Bank by an unconditional sale, and paid value for such assets, then there is no liability. If, however, the transaction between the Mountain Park State Bank and the Planters State Bank is a consolidation or a merger, or if the

Planters State Bank is a successor of the Mountain Park State Bank in a legal sense, then the Planters State Bank is liable for the indebtedness." (p. 43.)

In the second place, appellant strenuously insists that the old bank was not liable on the Winslow and Allen notes nor the ones for which they were substituted. In this connection complaint is made as to the introduction of oral evidence to show the contract between the banks as to the borrowing of money from each other and the purpose and method of transferring notes as collateral security. There was no attempt by the oral evidence to show an undisclosed principal or to alter or vary the terms of a written instrument. The oral evidence tended to show the plan and terms of procuring and making loans and securing the account by assignment of notes as collateral and renewing of and substituting for such notes. The following are portions of the findings of fact along this line which appear to us to be fully supported by competent evidence:

"During the latter years of the Bowling administration there grew up between the two banks a reciprocal relationship or arrangement by and through which the two banks would exchange notes from their note cases and each bank credit the other bank with the notes received, and would also exchange currency when either of the banks needed an increased reserve of currency. Notes so exchanged were not discounted, but were credited at face value, the sending bank usually being charged six per cent interest upon the notes and at the collection of the note the sending bank was credited with the difference between that rate and the rate which the notes bore. Generally the sending bank was responsible for the collection and paid the incidental expenses therefor. Frequently notes were renewed from time to time and the renewal notes forwarded to replace the former notes.

"The matters were handled between the various banks by means of oral conversations between the presidents thereof and also through written correspondence and telephone communications. These would take place from time to time as exchanges in notes or dealings between the banks required.

"From time to time, and contemporaneous with the making and renewal of the notes in question and with other transactions between the banks through correspondence accompanying the various notes, agreements and understandings were entered into between the two banks as to the handling of its paper. An understanding and custom of handling papers had also grown up between the two banks through a period of a number of years.

"By reason of the agreements between the two banks and in the handling of the various notes, including the Allen note and the Winslow note and their predecessors, each bank was carrying an account for money loaned to the other bank and holding the notes as collateral security for the loan. Each bank had a right to charge back in the account any objectional notes held for the other bank. Each bank became engaged in the role of debtor and creditor

as to the other bank as their accounts and transactions might show from time to time."

The oral evidence as to such a contract between the banks and the use of the notes in connection therewith was well confirmed by numerous letters transmitting the notes and the renewals thereof. Such evidence and the findings thereon come well within the ruling in the case of *Bank v. Bank,* 98 Kan. 563, 159 Pac. 403.

"A judgment rendered on an oral contract between banks concerning the transfer of notes and credit given will not be reversed when based on a general finding, where the evidence is not clear as to what the oral contract was, but shows that the contract was afterward confirmed by letters which referred to the oral contract but did not state the complete terms thereof, and the contract is partly explained by the subsequent conduct of the parties." (Syl. ¶ 1.)

"Where notes are transferred from one bank to another by indorsement, evidence to show the contract between the banks as to the purpose for which the notes were transferred is competent." (Syl. ¶ 2.)

The opinion in the case of *Bank v. Bank,* 116 Kan. 303, 226 Pac. 998, relied upon by appellant, distinguishes that case from the case in 98 Kansas above cited by showing that in one the oral evidence was used to vary the terms of a written instrument, which is entirely different from outlining the terms of a loan contract and the use of collateral security therefor and that being confirmed by a number of letters putting such plan into actual use and operation. It was further held in 98 Kansas, *supra:*

"Negotiable promissory notes are indorsed for various purposes; sometimes for the purpose of transferring all title, sometimes as collateral security for other obligations, and sometimes for collection, or other purposes. The purpose for which the notes are indorsed rarely, if ever, appears in the indorsement. It is not necessary that the purpose shall so appear. The evidence objected to was competent." (p. 566.)

The decision in *Hanover Nat. Bank v. First Nat. Bank,* 109 Fed. 421, a Kansas case, covers many features of the one at bar. It not only sanctions the use of oral evidence to outline and explain the oral contract to borrow money, but also considers the attempt to relieve the borrowing bank of liability by later making the claim that the loan was made to an officer individually and not to the bank, which is urged in this case.

The following is the holding of the federal court in the eighth circuit in a recent case from North Dakota:

"Where the stockholders of a state bank organized a national bank which took over the assets of the state bank for a consideration of one dollar and its agreement to pay the deposits, time certificates, cashier's checks, and certain bills payable of the state bank, and the state bank returned to its princi-

pal stockholders the amount of the assessment levied against all the shares a few years before which had all been paid by the principal stockholder, and the sum so returned was used by him to repay the loan of the money necessary to organize the national bank and to purchase additional stock in the national bank, the transfer of the assets rendered the national bank liable for the amount of a loan made to the state bank secured by a note pledged as collateral." (*Merchants' Nat. Bank v. First Nat. Bank,* 238 Fed. 502, syl. ¶ 4.)

See, also, *Bank v. Bank,* 96 Kan. 558, 152 Pac. 769, and *Andale State Bank v. Wichita State Bank,* 126 Kan. 441, 268 Pac. 735, where the borrowing banks were held liable to the loaning banks where the loans were made by an officer with the use of his individual signature for the benefit of the borrowing banks.

The appellant contends that the account of the defendant secured by the Winslow note was barred by the three-year statute of limitations, and that it would not come under the provisions of R. S. 60-715 as a set-off or counterclaim because it was barred before the claim of the plaintiff originated, showing the plaintiff's note and guarantee were delivered to the plaintiff's assignor February 16, 1922, and that the original note, which according to the theory of the defendant was given as collateral for an account with the Fairview State Bank, was the Hartshorn note dated April 2, 1918. This particular account commencing that date would be three years old on April 2, 1921, and would therefore be barred several months before the giving of the note and guaranty held by the plaintiff on February 16, 1922. If these were the only dates and facts there were in the record perhaps such reasoning would be logical, but shall we not properly consider the fact that the interest was paid on that account many times, or on the note securing the same, and that this note was twice renewed by Hartshorn? Then at the request of the Carmen National Bank the note of the Grizzly Bear Oil Company was substituted for it, and the latter note was renewed four times and then substituted by the note of Winslow, the president of the bank, and it in turn was renewed eight times, the original account itself never having been settled. On the other hand, if we are to go back to the original account of the Fairview State Bank and original note securing the same, why should that plan not apply to the note set up by the plaintiff when it sues upon the last renewal and guarantee thereof? The court found the original Arkansas note came into correspondence in March, 1920, and was assigned to the Carmen National Bank two months later for the benefit of the

Fairview State Bank. The two accounts and evidences of indebtedness were running concurrently, and the frequent payments of interest on the Winslow note to apply on the account which it secured prevented the statute of limitations from running. The adverse claims were coexisting and were overlapping in point of time as live demands. (*O'Neil v. Eppler*, 99 Kan. 493, 162 Pac. 311; *McKenna v. Morgan*, 102 Kan. 478, 170 Pac. 998; *Ramsel v. Brandt*, 119 Kan. 756, 241 Pac. 117.) The relation of these banks was, as to their respective dealings as found by the court, that of debtor and creditor. The two remaining subdivisions of this heading are not matters of law but of evidence. A full copy of exhibit 7 set out in the counter abstract shows that not only the Winslow and Allen notes were assigned by the Fairview bank to the defendant, but also the account with the Carmen National Bank which they secured. And the undisputed evidence shows, in harmony with the findings, that the money borrowed from the Fairview State Bank, and secured by the two notes of which these were renewals or substitutions, was transmitted to the Carmen National Bank. The transaction was between the banks, and the rights of the loaning bank will not be affected by the fact that the borrowing bank may have later paid the same amount of money to an individual officer of its bank without the knowledge of the loaning bank.

Finding, as we do, that the statute of limitations had not run to bar the account of the defendant before the origin of the plaintiff's claim, the fourth heading is disposed of without the use or application of R. S. 60-715.

We therefore conclude that the two notes held by the defendant were not barred by the statute of limitations, that they constitute a proper set-off and counterclaim against the claim of the plaintiff, and that they were obligations of the old bank for which the new bank under all the circumstances became liable by reason of its purchasing, absorbing and continuing the business of the old bank with full knowledge of these adverse claims before the purchase.

The judgment is affirmed.