FIRST NAT. BANK OF PAMPA v. FIDEL-
ITY NAT. BANK OF OKLAHOMA
CITY.

No. 7302.

Circuit Court of Appeals, Fifth Circuit.

Dec. 22, 1934.

J. B. Dooley, of Amarillo, Tex., for appellant.

C. B. Stuart and M. K. Cruce, both of Oklahoma City, Okl., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The Pampa National Bank brought this suit against the Fidelity National Bank to enforce a deposit liability of $7,200. Appellant, First National Bank, as assignee, came in and carried the suit on. The Fidelity Bank defended on the ground that on June 2, 1931, it had appropriated $7,200 the Pampa Bank had on deposit with it by charging the account with a $7,200 note of one Hopkins, theretofore discounted by it for the Pampa Bank. It claimed, and over objection was allowed to prove, that it had done this under a general oral agreement that the Pampa Bank would carry a deposit account with it, and that all notes that Bank sent to it for discount, though indorsed without recourse, were to be charged to this deposit account, if not paid at maturity.

Appellant objected to this evidence as varying the written contract evidenced by the note, indorsed without recourse by the Pampa Bank, and the letters of transmittal and receipt, showing that the note was discounted by the Fidelity Bank on the individual indorsement of Dodson. It urged that to receive this evidence was to permit recovery on a contract entirely different from the writings into which the parties had integrated, and which constituted, their contract. The District Judge thought the evidence as to the prior oral agreement admissible. He overruled objections to it when made. He denied the plaintiff's motion made at the conclusion of the evidence, to strike it out, and its motion for a directed verdict. From the judgment on an adverse verdict, the Pampa Bank appeals.

The testimony was brief, and except on the one point, whether there was a general oral agreement for charging against the Pampa Bank's deposit account notes the Fidelity Bank discounted for the Pampa Bank, when the notes fell due, there was no conflict in it. The deposit liability being admitted except as discharged by charging the Hopkins note against it, plaintiff, to prove the wrong of the charging, offered: The 120-day note of Mrs.

Hopkins for $7,200, dated May 2, 1930, payable to the Pampa National Bank, indorsed, "Without recourse, Pampa National Bank, J. M. Dodson, President," and indorsed by Dodson as accommodation indorser; the letter of Dodson sending the note to the Fidelity Bank:

"May 3, 1930

"Mr. John A. Campbell, President, Fidelity National Bank, Oklahoma City, Oklahoma.

"Dear Mr. Campbell: I am enclosing Mrs. Maggie Hopkins' note for $7,200.00 secured by 97 cows and 45 yearling calves with a copy of the chattel mortgage. I have sent the original mortgage to the County Clerk and will forward his receipt in the next few days. Mrs. Hopkins is a good customer of the Bank and is needing a little more money than our limit.

"If you can use this paper please give the Pampa National Bank credit for same for the use of Mrs. Hopkins and mail us a debit slip covering the interest on same. Thanking you very much, I am,

"Yours very truly,
        "J. M. Dodson, President."

and the letter of the Fidelity Bank acknowledging receipt of the note and agreeing to discount it on Dodson's indorsement:

"May 5, 1930

"J. M. Dodson, President, The Pampa National Bank, Pampa, Texas.

"Dear Mr. Dodson: We acknowledge of your letter of May 3rd enclosing note of Mrs. Maggie Hopkins in the amount of $7,200.00 with maturity 120 days.

"We are discounting this to maturity on your indorsement, and herewith attach credit memorandum for $7,056.00 proceeds.

"We are glad to handle this for you at this time.

"Very truly yours,
        "Jno: A. Campbell, President."

a deposit slip on the regular form of the Fidelity National Bank, as follows:

"Deposited With

"Fidelity National Bank, of Oklahoma City,
    "The Pampa National Bank
        "Oklahoma City, May 3, 1930.
"For the credit and advice of Mrs.
    Maggie Hopkins..........$7,056.00."

and rested. It later offered a renewal note and covering letters.

Defendant, to maintain the rightfulness of the charge over the objections of plaintiff carefully making and exceptions fully preserving the point, put Campbell on to testify to the claimed oral agreement. Campbell swore: "I became acquainted with two of the officers of the Pampa National Bank, Mr. Dodson and Mr. McAlister, whom I met in the Bank at Pampa in June 1929. I had a conversation with Mr. Dodson with reference to furnishing them certain credit or accommodation by my bank. * * * At that time we had no account with the Pampa National Bank. I went in there with a mutual friend and he introduced me to the two officers named, and I solicited that account for my bank, and among other things they said that the only accommodation they wanted was a note taken care of, which had become stale, or for some reason they wanted to get it out of the Bank, and I told them I could take care of these in the usual way. He mentioned some that he had there on another bank, that had been there for some time, and he might want to turn them to some other bank. I said 'How are these handled.' He said 'We indorse the notes without recourse and give the bank the authority to charge them to our account at maturity.' I said 'We will handle a reasonable amount of these notes for you provided your balance with us justifies it.'"

Dodson and McAlister denied that any such agreement was made. Dodson testified that, in specific instances of notes they had procured to be discounted with other banks for customers whom the Pampa Bank had already accommodated up to its legal loan limit, he had specifically authorized such a charge, but that in no instance, and with no bank, had he ever made a general arrangement of the kind Campbell testified to. He specifically denied that there was any agreement at any time as to the Hopkins note, except that shown by the note itself, and the letters of transmittal and receipt. There was evidence that the Fort Worth Bank, with whom the Hopkins note had been before it was placed with the Fidelity Bank, had been specifically authorized to charge it to the Pampa Bank's account. There was testimony from its officers that they had done this from time to time on specific authority with other notes, but they had never had a general agreement to do so. There was evidence, too, that in one specific instance, the case of the note of McConnell, the Pampa Bank had specifically authorized the Fidelity Bank to charge the note to the Pampa account. There was evidence, however, that, without any such specific authority, the Fidelity Bank had, in other instances, so charged notes, but that when renewal notes came forward the charge was reversed,

Without going further into detail, it is sufficient to say, though there was an absolute and complete conflict in the evidence, that, taken as a whole, it was, if not contradictory of the written agreement on which the Hopkins note was discounted, sufficient to support a jury finding that there was a general agreement of the kind Campbell testified to as to notes discounted by the Fidelity Bank on the faith of this agreement. An agreement looking to providing an arrangement by which the Pampa Bank could accommodate its customers by the appearance of having bought and sold their paper, though in fact, by the agreement for maintaining the deposit as security, the Pampa Bank was really making them the loan.

The case was tried below upon the theory that the Hopkins note was handled in that way. We think that but for the fact of Dodson's indorsement, and the letters of transmittal and receipt, by which the discount was effected, it ought to be held that it was competent for the Fidelity Bank to prove that it had a general arrangement of the kind Campbell testified to. Such evidence would not be in contradiction or variance of the restrictive "without recourse" indorsement on the note. It would be proof of an independent agreement, not that the note could be sued on, but that moneys which the Pampa Bank had with it on deposit were to stand in the Fidelity Bank as security for the discounted notes. Northrup National Bank v. Yates Center, 98 Kan. 563, 159 P. 403; Merchants' Nat. Bank v. First Nat. Bank (C. C. A.) 238 F. 502; Goldstein v. Union Nat. Bank (Tex. Civ. App.) 216 S. W. 409; Central State Bank of Dallas v. State Bank (Tex. Civ. App.) 276 S. W. 941; First State Bank of Hartshorne v. Southwest Nat. Bank, 127 Okl. 10, 257 P. 382; First Nat. Bank of Carmen v. Willis, 128 Kan. 681, 280 P. 782; First Nat. Bank of Ardmore v. Fidelity Nat. Bank, 130 Okl. 164, 265 P. 1071; c/f Polk County Nat. Bank of Bartow v. Shelton (C. C. A.) 69 F.(2d) 352.

But this is not the case the proof made out. That case is one of a discount effected under terms and conditions wholly written, and under circumstances not bringing it within, but taking it out of the general agreement claimed. The agreement for the discounting of the Hopkins note is not merely evidenced by, it was constituted of, the writings into which the parties integrated their agreement about its discount; the note itself, the indorsement of Dodson, the letters of May 3 and 5 sending forward and acknowledging its receipt. A similar note given in renewal on August 26, 1930, and accepted by the Fidelity Bank under these two letters—one from Dodson to Campbell, dated August 26, 1930, "Mrs. Hopkins' note will be due with you in few days and she would like to renew same. She has plenty of feed and grass and does not want to sell those cattle on a low market. I will endorse the note as before," and from Campbell to him, dated August 28, "It will be agreeable to renew the note of Mrs. Hopkins with the understanding that you will personally endorse the note as before," reaffirming the transaction—but emphasizes the constitutive character of the writings on which the note was discounted. These transactions evidencing a discounting upon a special, a particular arrangement upon the faith of the Dodson indorsement cannot be varied by a parol agreement made more than a year before, with regard to notes not personally indorsed by anybody, but indorsed without recourse by the Pampa Bank. This is the way Campbell states the general agreement he claims to have had: "I said 'How are these handled?' He said 'We endorse the note without recourse and give the bank the authority to charge them to our account at maturity.' I said, 'We will handle a reasonable amount of these notes for you provided your balance justifies it.'"

In South Florida Lumber Mills v. Breuchaud, 51 F.(2d) 490, 493, we had occasion to consider a claim very much like this one. There we said: "It is settled law that under the rule applicable to a situation of this kind it was the duty of the trial court primarily to determine whether the matter sought to be orally proven has been integrated in the written agreement, by ascertaining from the conduct and language of the parties, and the surrounding circumstances, what was their intent. 5 Wigmore, § 2430."

Under this settled law it was error to receive the oral evidence; error not to strike it out; error not to instruct for the plaintiff. Inner Shoe Tire Co. v. Treadway (C. C. A.) 286 F. 838, 840; Murphy v. India Tire & Rubber Co. (C. C. A.) 29 F.(2d) 228.

It appears from the record that the case has been fully developed, and that it is not likely that, on another trial, there will be different evidence showing that the note and the letters of transmittal and receipt regarding it did not constitute the whole contract. We think it proper, however, to say, against the event of such a situation arising, that there was no error in admitting evidence of the handling of other notes as

tending to bear out the existence of the general agreement, but that there was error in admitting in evidence, over the objection of the plaintiff, the self-serving letters written by Campbell after the controversy arose.

· The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.