James M. Carson and John J. Lindsey, both of Miami, Fla., for appellant.

Walter W. Foskett and Paul W. Potter, both of West Palm Beach, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

## WEBER–SQUIRES CORPORATION v. FIRESTONE TIRE & RUBBER CO.
### No. 7242.

Circuit Court of Appeals, Fifth Circuit.
April 16, 1935.

HUTCHESON, Circuit Judge.

The suit was on a building contract to establish and foreclose a lien for amounts claimed to be due and unpaid. The claim was that the plans and specifications on which the contract was let were different from and much more costly than those on which bids were taken, and that plaintiff, in signing the contract on those plans, had been led by defendant to believe that, except in one particular which had been taken care of in increasing the bid, the plans were not substantially changed.

It was claimed that the result of these changes was to nearly double the cost of the work, and that plaintiff was entitled to recover these excess costs as extras. It was claimed, too, that plaintiff had been damaged by the owner's delays in connection with the carrying on and payment for the work and its final acceptance. The defense was that plaintiff could not, suing on the contract, recover against its provisions; that plaintiff had been allowed and fully paid for all extras, and that plaintiff had not been damaged by the owner's delay. It was specifically alleged by the defendant that the changes in the plans and specifications were made known to plaintiff, and plaintiff raised its bid on account thereof, and that it was on the bid on the new plans

that the contract was let. The parties stipulating that the testimony be taken before a commissioner or special master, J. W. Salisbury was appointed to take and report the testimony. More than 300 pages of testimony was taken, and many documentary exhibits were filed. The three members of the Weber-Squires corporation, Weber, Squires, and Sjostrom, testified for plaintiff, Harvey, defendant's architect; Chatfield, the engineer in charge of defendant's construction program, for defendant. The master, though he was appointed only to take and report the testimony, in addition to doing this made extended findings of fact and law. To all of these plaintiff excepted. The District Judge did not consider and pass upon these exceptions. He took the case as it was made by the evidence and determined it for himself. In this he was right. The appointment had been only to take and report, not to make findings on, the testimony. He thought that since the suit was on a written contract, and no fraud was alleged or proven, it could not be varied by parol; that plaintiff must stand or fall by the contract as written. We think he was right. The evidence leaves in no doubt that all the original bids were rejected, that new plans and specifications were made, that they were fully discussed with Mr. Squires, and the new bid was made with full knowledge of what the new plans and specifications showed. Mr. Weber does testify that he did not know what was in the plans; that he had been told by Mr. Squires that the only substantial change was as to the steel work, and by defendant's architect and its engineer that the changes were not otherwise substantial. These two flatly denied that they had made any such statement to Weber, or that in any way they had represented to plaintiff, or led it to believe, that the plans and specifications on which the contract was let were other than they turned out to be. Mr. Squires admits that he knew that dimensions had been considerably changed, and that generally there were changes in the plans besides those regarding the steel. His claim is that he did not figure them for costs, because he had it understood that all additional costs of the new plans over the old were to be considered extras and paid for as such. The testimony of the architect, clear and consistent throughout, does not support this claim. In addition, plaintiff claims that the value of the work actually constructed was $23,000; defendant, that in allowing and

paying plaintiff $13,339.70, $4,000 more than the contract price, it has more than paid plaintiff the full value of the work done, in fact, has liberally overpaid it. If the testimony of plaintiff's witnesses was as clear and consistent as that of defendant's is, plaintiff, carrying the burden to make out its case, would still find itself hardly put to it to do so. When the inconsistencies of plaintiff's testimony are considered in the light of the consistencies of defendant's, it becomes plain that no other finding than one for defendant would have been justified. One of the plaintiff's officers, Mr. Weber, claims that the new plans and specifications were accepted and the contract signed on them without examination, upon the statement of another officer that he had examined them and found them not different, except in one particular, namely, the steel, and upon the assurance of defendant's architect that they were not substantially different. The other officer, Mr. Squires, admits that he examined the plans and noted the changes in the dimensions, and particularly noted that there would be considerable additional cost, but that he had an understanding that though the contract was to be based upon, and the work was to be done under new plans and specifications, it was to be paid for on the basis of the plans used in the bidding; all work required by the contract in excess of that required by the bidding plans to be paid for as extras.

Weber's statement that Squires told him that there were no substantial changes in the plans, though not contradicted by Squires, is deprived of effect by Squires' admission that he knew of the changes in the plans, but was relying on his understanding that they would be paid for as extras. This statement of his understanding is contradicted by the testimony of defendant's witnesses that no such statements were made; no such understandings were had. It is defeated by the principle that the architect had no authority to make any such agreement, and by the further principle that the parties having integrated their agreement into the written contract, of which the new plans and specifications were a part, parol understandings may not be received to contradict it. First National Bank of Tampa v. Fidelity National Bank of Oklahoma City (C. C. A.) 74 F.(2d) 447; South Florida Lbr. Mills v. Breuchaud (C. C. A.) 51 F.(2d) 490; Inner Shoe Tire Co. v.

Treadway (C. C. A.) 286 F. 838, 840; Murphy v. India Tire & Rubber Co. (C. C. A.) 29 F.(2d) 228.

But appellant argues, it is not claiming the right to alter the contract by parol; it is merely insisting that the evidence shows an overreaching of plaintiff by the substitution of the plans, resulting in an unjust enrichment of defendant, and that a court of equity is competent to prevent this by compelling defendant to pay plaintiff the amount by which it has been thus unjustly enriched. It insists that its suit, while not in terms to reform the contract, is such in effect, for though it is apparently brought on the contract, it is brought on it as it is alleged the parties understood it to be.

We find it unnecessary to determine whether plaintiff's pleadings would support the relief it asks, if its proof were sufficient, for we think it quite clear that the proof does not support the claim. If plaintiff's testimony, that the contract was signed and fully performed without the plaintiff's knowing or finding out that the plans and specifications under which it was performing it were substantially different from those on which it bid, stood alone, it would greatly tax credulity to believe it. When to its inherent improbability the positive contradiction of defendant's witnesses is added, it is seen to be incredible.

The decree is affirmed.