KANSAS CITY TRUST COMPANY, a Missouri Banking Corporation, Respondent, v. MAYFLOWER SALES COMPANY, a Missouri Corporation, Appellant, No. 44926—291 S. W. (2d) 51.

Division Two, May 14, 1956.

Motion for Rehearing or to Transfer to Banc Overruled, June 11, 1956.

*Phineas Rosenberg* and *Paul Barnett* for appellant.

960

*Hilary A. Bush, Fred A. Murdock* and *Johnson, Lucas, Bush & Gibson* for respondent.

[51] BOHLING, C.—Action on a guaranty and wholesale repur-chase agreement. The Kansas City Trust Company, a banking corporation, herein designated plaintiff, sued the Mayflower Sales Company, a corporation, herein designated defendant, in two counts and had a judgment for $21,693.23 on Count I and for $1,796.47 on Count II. Defendant appeals; contending the negotiable instruments involved, endorsed without recourse by defendant, were not subject to said written agreement, and that certain testimony was inadmissible. Defendant offered no witness. The case was tried to the court without a jury.

Defendant was engaged in business as a wholesaler of electrical appliances. In May, 1950, negotiations were conducted at plaintiff bank by M. B. Lasky, President, M. E. Davis, Credit Manager, of defendant's St. Louis office, and G. Claiborne, Manager of defendant's Kansas City office, on behalf of defendant, and Robert J. Campbell and C. E. James, Vice-presidents of plaintiff. Thereafter, the Mayflower Sales Company, St. Louis, Missouri, by its President, addressed the following letter to defendant, dated June 1, 1950:

"Kansas City Trust Company

1822 Main Street

Kansas City, Missouri      Re: Wholesale Repurchase Agreement.

"Attention: Mr. Robert Campbell

"Dear Mr. Campbell:

"Undersigned desires to have you purchase acceptable promissory notes, drafts, acceptances, conditional sales contracts, chattel mortgages, bailment leases or trust receipts, herein called, 'Wholesale Instruments,' covering the sale of Wholesale Norge, Emerson, or Dumont merchandise bearing a model and serial number of each piece of merchandise, by persons, firms or [52] corporations herein called, 'Dealers', whose credit and financial responsibility is acceptable to you in connection with the purchase of said equipment from Undersigned at Wholesale.

"In consideration of your purchasing such Wholesale Instruments, Undersigned unconditionally guarantees that such Wholesale Instruments executed by Dealers of the Undersigned with respect to the purchase of said equipment, and/or the renewals or extensions thereof, will be paid by Dealers obligated thereon in full when due, in accordance with the terms of such Wholesale Instruments, and that in the event of the failure of any Dealer to pay at maturity such Wholesale Instruments or extensions or renewals thereof, Undersigned will, upon demand, pay the entire unpaid balance owing on any such Wholesale Instruments, together with interest thereon after maturity, and any attorneys fees, court costs and other expenses paid or incurred by you in enforcing or attempting to enforce payment of such Wholesale Instruments, or in repossessing or attempting to repossess the equipment covered thereby, or in the prosecution

or defense of any action or any matter arising out of or connected with such Wholesale Instruments.

"This contract may be cancelled by either party upon written notice."

Thereafter, on June 12, 1951, defendant, by its President, forwarded an identical letter to plaintiff, with the exception that at the close of the second paragraph a proviso, of no materiality here, was added to the effect that defendant's liability should not exceed $80, 000.

On December 17, 1951, M. B. Lasky, President of defendant, sent the following telegram to plaintiff:

"Have advised our Kansas City office not to give your bank any more floor plan paper unless you sign new agreement sent to you. Use this notice not to accept any more paper until I receive new agreement."

On December 20, 1951, plaintiff and defendant executed a new guaranty agreement. It reads (date and signatures omitted):

"It is understood and agreed that the Kansas City Trust Company (herein called Lending Agency) may finance transactions involving the sale of appliances by Mayflower Sales Company, Inc. (herein called Distributor) to various dealers selected and approved by Distributor and Lending Agency.

"In connection with any such loan or extension of credit made hereunder, the Lending Agency shall require in advance a minimum down payment equal to not less than ten (10%) percent of the Dealers purchase price of such appliances.

"The initial terms of any such loan or extension of credit shall be ninety (90) days or less. The Lending Agency may make as many as three (3) renewals, each renewal subject to not less than a ten (10%) percent reduction payment. If the dealer should default on any such loan or extension of credit, made hereunder, and the Lending Agency be forced to repossess said merchandise, the Distributor will repurchase such new merchandise on hand with said Dealer, from the Lending Agency within ten (10) days after receipt of written notice from the Lending Agency. The repurchase price shall be the amount of the unpaid balance due the Lending Agency on said merchandise, plus costs of repossession, if performed by the Lending Agency or its agent, on the unpaid balance. In no event shall the repurchase obligation of the Distributor exceed the actual billing price of said merchandise when financed.

"Either party hereto may cancel this Agreement at any time upon thirty days notice in writing of its intention to cancel. Termination of this Agreement shall in no means affect the obligations of Distributor as to equipment covered by wholesale paper purchased or acquired by Lending Agency prior to the effective date of termination of this Agreement."

On June 25, 1952, M. E. Davis, defendant's credit manager, St. Louis, Missouri, wrote plaintiff, "Re: Jenkins Furniture Co., Neodesha, Kansas," as follows:

"Attached you will find our check in the sum of $556.86 which pays your Bank on [53] the entire Wholesale outstanding balance on the above mentioned dealer.

"This check covers items sold by this dealer and not paid for by them."

Defendant contends the court erred in failing to sustain its motion to strike plaintiff's reply on the ground said reply set forth a different claim than that alleged in the petition and constituted a fatal departure from the claim pleaded in the petition.

Plaintiff says it seeks no recovery on an oral guaranty; that defendant's answer raised the affirmative defense that by reason of the "without recourse" endorsements defendant's offers of guaranty were revoked and not applicable; that a reply was proper (Cordner v. Roberts, 58 Mo. App. 440); that plaintiff did not abandon the claim pleaded in the petition but pleaded the facts upon which it based the plea of estoppel in its reply. We take the issue as submitted.

Defendant does not differentiate between Counts I and II. The same legal theories of recovery on the part of plaintiff and of defense on the part of defendant are presented with respect to all Wholesale Instruments sued on. A statement of the pleadings and facts covering the issues in Count I fully presents the issues and there is no occasion to detail the pleadings and facts with respect to the instrument sued on in Count II.

Plaintiff alleged in its petition:

"2. That on or about June 1, 1950, plaintiff and defendant entered into a written contract whereby defendant agreed that if plaintiff purchased from defendant certain acceptable promissory notes * * [naming the instruments specified in the contract to be executed by "dealers"], therein called 'Wholesale Instruments,' * *; that, in consideration thereof, defendant agreed unconditionally to guarantee that such 'Wholesale Instruments,' executed by dealers of defendant * *, including renewals or extensions thereof, would be paid by the dealers obligated thereon, in full when due * *, [et cetera]. * *

"4. That, pursuant to said contract, plaintiff from time to time purchased from defendant certain 'Wholesale Instruments' * *; that thereafter certain renewals or extensions of said 'Wholesale Instruments' were made; that thereafter the makers of said 'Wholesale Instruments' * * failed and refused to pay the amounts due and payable as provided in said 'Wholesale Instruments' and plaintiff made demand on defendant * * [et cetera].

"5. That the final extension or renewal of said 'Wholesale Instruments' purchased by plaintiff from defendant, pursuant to said contract, which were not paid by makers when due are more fully

described as follows: [Here plaintiff describes different "promissory notes and conditional sales contracts payable to defendant"—plaintiff's Exhibits C through O.]"

Attached to plaintiff's petition as exhibits were the aforesaid letters of June 1, 1950, June 12, 1951, and December 20, 1951 (Exhibits A, B and P, respectively), and the Wholesale Instruments sued on in Count I (Exhibits C through O) and Count II (Exhibit Q).

Defendant admitted in its answer its execution and delivery of the written contract of guaranty; admitted that from time to time plaintiff purchased from defendant Wholesale Instruments executed by defendant's dealers identical in form with Exhibits C through O, "including defendant's endorsement thereon 'without recourse' "; admitted that renewals of said instruments were made; admitted that the makers defaulted in payment; admitted that plaintiff made demand on defendant to pay, with interest et cetera; admitted that defendant refused and still refuses to pay; and denied that the demand for payment and refusal to pay were pursuant to said contract of guaranty.

Defendant also alleged in said answer that all of the Wholesale Instruments were endorsed by defendant "without recourse"; that by reason of said endorsement, defendant's offers in said contract of guaranty were revoked and were inapplicable to said [54] instruments sued on; denied that the Instruments sued on were purchased by plaintiff pursuant to defendant's offer of guaranty; and alleged that defendant's offer of guaranty was the only offer of guaranty made by defendant to plaintiff that could possibly be applicable to the instruments described in Count I of plaintiff's petition, and that any oral offer of guaranty by defendant to plaintiff, or oral modification of such guaranty, was contrary to § 432.010, RSMo 1949, VAMS, and wholly void.

Plaintiff alleged in its reply that following the guaranty offer, plaintiff purchased many Wholesale Instruments of defendant's dealers from defendant, including those sued on; that plaintiff and defendant agreed, understood and intended that, despite defendant's "non-recourse endorsement," all of said instruments were purchased pursuant and subject to the terms of said guaranty agreement; that certain customs and practices developed and were followed to facilitate handling said transactions; that defendant would take a Wholesale Instrument covering 90% of the purchase price of merchandise sold to a dealer and collect from the dealer 90 days interest thereon and 10% of the purchase price; that defendant thereafter would endorse said instrument "without recourse," deliver it to plaintiff, together with the advance interest, and plaintiff would credit defendant's account in an amount equal to the principal obligation on said instrument; that if the dealer had not sold the merchandise when said instrument became due, defendant secured a renewal of said instru-

ment, collected additional interest from the dealer, and delivered the renewal and the additional interest to the plaintiff; that if the dealer made default in payment, defendant would pay to plaintiff the full amount due, with interest, and proceed to take such action as defendant saw fit to protect its interest; that upon default occurring on the Wholesale Instruments mentioned in Count I (Plaintiff's Exhibits C through O), defendant, pursuant to the terms of the guaranty agreement and in accordance with the custom and practice, advised plaintiff it would pay in full, with interest, the amount due on all such instruments; that defendant repossessed the property given as security for said instruments, sold the same for its own account, and dealt with such property as though it had the right, power and obligation under the guaranty agreement to take the property, sell it, and pay plaintiff the unpaid balance due on such instruments, and in so doing, asked for and received the full cooperation of plaintiff in reducing its loss; and that by reason of said facts, defendant was estopped to deny that the Wholesale Instruments sued on in Count I were delivered to plaintiff pursuant to and subject to the terms of the guaranty agreement.

"In pleading to a preceding pleading, a party shall set forth affirmatively * * estoppel * * and any other matter constituting an avoidance or affirmative defense." § 509.090. The substance of plaintiff's reply was that defendant by reason of the facts alleged was estopped in plaintiff's action upon the guaranty from relying upon the defense that the Wholesale Instruments had been endorsed by defendant "without recourse." This was a defensive plea to new matter in defendant's answer and did not constitute a departure from the claim stated in plaintiff's petition. Swanson v. Georgia Casualty Co., 315 Mo. 1007, 287 S. W. 455, 462[7]; Reid v. Brotherhood of Rd. Trainmen, Mo. App., 232 S. W. 185, 188[3, 5]; Ellyson v. Missouri P. & L. Co., Mo. App., 59 S. W. 2d 714, 717[3-5]. Defendant's cases to the effect a plaintiff must recover upon the claim stated in the petition, if at all, and not upon a different claim stated in the reply are not applicable. City of Columbia v. Malo, Mo. App., 217 S. W. 625, 628[5]; Mathieson v. St. Louis & S. F. R. Co., 219 Mo. 542, 552, 118 S. W. 9, 12; Jennings v. Cherry, 301 Mo. 321, 257 S. W. 438, 441[11], among others.

Speaking to an amendment of a petition under our new code and departure from the original claim pleaded, we said in White v. Sievers, 359 Mo. 145, 221 S. W. 2d 118, 121[3]: "We expressly hold that the rule against departure is no longer to be enforced. It has been abrogated by the new [55] code." O'Neal v. Mavrakos Candy Co., Mo. App., 255 S. W. 2d 138, 142[5]; Kearns v. Sparks, Mo. App., 260 S. W. 2d 353, 357[1].

Under the Negotiable Instruments law endorsements with "recourse" impose liability on the endorser according to the provisions

of said law (Industrial Bk. & Trs. Co. v. Hesselberg, Mo., 195 S. W. 2d 470, 476[22]); and endorsements "without recourse" exempt the endorser from liability as endorser, except that under said law he remains chargeable with certain implied warranties (§§ 401.038; 401.065; Friedman v. Schneider, 238 Mo. App. 778, 186 S. W. 2d 204, 208; Arthur v. Rosier, 217 Mo. App. 382, 266 S. W. 2d 737, 738[3]; Bank of Hughesville v. Fricke, 215 Mo. App. 614, 256 S. W. 1097, 1099[5]; 10 C. J. S. 702, § 214 b(2); 8 Am. Jur. 60, §§ 325, 540).

■ Defendant, as endorser without recourse, remained a vendor of the negotiable instruments; and, although relieved of certain obligations under the Negotiable Instruments law (Annotation, 134 Am. St. Rep. 993; 2 ALR 220, 91 ALR 402), was not protected by said law against obligations under a separate agreement as vendor of the paper (38 C. J. S. 1195, § 46, nn. 63, 64). We know of no rule of law prohibiting the vendor and purchaser of such paper contracting in writing with respect to the liability of the vendor. Plaintiff is not suing on the negotiable paper. The action is on defendant's written guaranty, and defendant's endorsements of the paper are not necessarily controlling. Under the record, the Wholesale Instruments were offered by defendant for acceptance by plaintiff (1) on the basis of the endorsement alone or (2) on the basis of the offer of guaranty.

■ Defendant's telegram of December 17, 1951, to plaintiff stated: "Have advised our Kansas City office not to give your bank any more floor plan paper unless you sign new agreement sent to you." The new agreement of December 20, 1951, was for the purpose of having plaintiff finance transactions of defendant with its dealers; that is, purchase "floor plan paper" of defendant's dealers payable to defendant. No occasion existed for the telegram or for the new agreement if defendant were exempt from all liability connected with the transactions by reason of its "without recourse" endorsements; and the telegram and new agreement, in words, contemplated the continuance of defendant's existing obligation to repurchase its dealer's paper.

. While counsel was questioning about all notes purchased by plaintiff from defendant, including notes not sued on, defendant's counsel objected on the ground such testimony was inadmissible for several reasons; but he also stated notice had been served on defendant to produce "a lot of original notes and one thing and another," and, to avoid a continuance, they agreed that secondary evidence might be used as to all such matters, subject to defendant's objections on any ground except the ground that it was secondary evidence. As stated, defendant admitted that plaintiff purchased from time to time Wholesale Instruments identical in form to the ones sued on, including the without recourse endorsement. Plaintiff established that notes of the Jenkins Furniture Company from defendant, were all endorsed without recourse; and defendant's letter of June 25, 1952, enclosed a $556.86 check in payment of the "entire Wholesale out-

standing balance'' of said Jenkins Furniture Company. This is an acknowledgment by defendant in writing that some instruments endorsed by defendant without recourse to plaintiff were within defendant's offer of guaranty. Citizens' Bk. v. North End St. Bk., 116 Kan. 303, 226 P. 998, 1000[3], 35 ALR 1109, discussing Northrup Nat. Bk. v. Yates Center Nat. Bk., 98 Kan. 563, 159 P. 403, 405[2]; First Nat. Bk. v. Willis, 128 Kan. 681, 280 P. 782, 784[2], discussing the above two cases; First St. Bk. v. Southwest Nat. Bk., 127 Okla. 10, 257 P. 382, 383[1, 2].

The instant action is between original parties. Defendant desired that plaintiff ''purchase acceptable promissory notes'' et cetera of defendant's dealers. Nothing is said in the offer about the endorsement, and what was ''acceptable'' to plaintiff was [56] not defined. The offer was a continuing one and when plaintiff purchased an acceptable note under the offer that particular purchase was performed by plaintiff.

Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, 62, 84 S. W. 76, 87, 88 (quoting Ellis v. Harrison, 104 Mo. 270, 279, 16 S. W. 198, 200), speaking to the interpretation of a written contract, states: '' 'When the subject-matter to which such a writing refers is not entirely definite and clear, it is permissible, and obviously just, to receive in evidence a description of the circumstances of its execution that the court may be placed, as near as may be, in the situation of the contracting parties with a view the better to adjudge in what sense the language used was probably intended by them.' * * * '* * * In order to ascertain the relation of the words of a document to facts, every fact may be proved to which it refers, or may have been intended to refer, or which identifies any person or thing mentioned in it.' ''

Great Western Printing Co. v. Belcher, 127 Mo. App. 133, 139, 104 S. W. 894, 895[7], an action against a guarantor, states: ''While it is true, parol evidence may not be introduced to alter or vary the writing, nor to add to or piece out an insufficient memorandum under the statute so as to supply substantial provisions not present in the writing, the law is settled to the effect that parol may be resorted to for the purpose and to the extent of informing the court of the situation of the parties and the circumstances under which the writing was made, in order to indue the court with the knowledge of the facts and circumstances surrounding and immediately connected with the transaction and the true situation of the parties at the time of contracting, to the end that the court may know and understand to what the terms of the contract shall apply.''

Parol evidence has been held proper to identify the notes involved, the subject matter of the contract. Thornton v. Crowther, 24 Mo. 164, 166; Welsh v. Edmisson, 46 Mo. App. 282, 287, and see Snip v. City of Lamar, 239 Mo. App. 824, 201 S. W. 2d 790, 798[6].

The parol evidence in the instant case established the facts pleaded in plaintiff's reply. For instance, and briefly, it established, among other things, that plaintiff would finance defendant through the purchase of floor plan paper of defendant's dealers only under an unconditional guaranty and repurchase agreement of defendant and would not service the paper of the dealers; that it was understood plaintiff would rely wholly on the repurchase agreement and purchase notes endorsed by defendant without recourse. Defendant's Mr. Claiborne brought defendant's offer of June 1, 1950, to plaintiff's Mr. James. They again discussed how the transactions would be handled and the paper would be endorsed. Mr. James explained plaintiff had defendant's financial statement, was relying on defendant's credit, was not setting up credit files on defendant's dealers and was not interested in their financial condition, and was relying solely on defendant's repurchase agreement. The first business was brought in by Mr. Claiborne, who endorsed the notes in suit. The proceeds of the notes would be credited to defendant's account and defendant would transfer the money to St. Louis by check. Defendant serviced the notes—collections, renewals, repossessions, et cetera, as though owner of the paper. Plaintiff purchased many notes from defendant, all, except one, endorsed without recourse. When a dealer defaulted, as several did, defendant repurchased the paper, in two instances making remittance by checks executed by its President in excess of $20,000 to take up notes of dealers endorsed by defendant without recourse.

The findings and judgment were for the right party. The judgment is affirmed. *Barrett* and *Stockard, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.